## COMMONWEALTH *vs.* FRANK R. HRABAK.

No. 01-P-1595.

Essex. February 6, 2003. - March 25, 2003.

Present: CYPHER, MASON, & McHUGH, JJ.

Further appellate review granted, 439 Mass. 1105 (2003).

*Evidence,* Cross-examination, Bias. *Practice, Criminal,* Argument by prosecutor. *Rape. Indecent Assault and Battery.*

At a criminal trial, the judge did not err in preventing the defendant from cross-examining a witness with respect to his arrest several days before the trial was to begin in order to show possible bias, where the defendant made no showing of some likelihood that evidence would be revealed somehow probative of the witness's bias. [652]

At the trial of indictments for rape and indecent assault and battery, there was error in the prosecutor's closing argument to the jury with respect to anal rape of one victim, where the prosecutor both misstated the evidence and then urged the jury to speculate on a matter beyond their common experience, and where the judge failed to give a curative instruction as the defendant requested; moreover, the error was not harmless, where it could not be said with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error; however, with respect to oral rape of one victim and indecent assault and battery upon another, the error was immaterial and reversal of those convictions was not required. [653-656]

INDICTMENTS found and returned in the Superior Court Department on October 14, 1998.

The cases were tried before *Howard J. Whitehead,* J.

*Steven J. Brooks* for the defendant.

*Valerie A. DePalma,* Assistant District Attorney, for the Commonwealth.

MASON, J. Following a jury trial in Superior Court, the defendant was convicted of two counts of rape of a child,[1]

[1]Although the language in the two rape indictments was identical, indictment 9877-CR-2197 was considered only with respect to oral rape, and indictment 9877-CR-2198 was considered only with respect to anal rape. The jury

John,[2] and also one count of indecent assault and battery upon another child, Anna, who is John's older sister.[3] On appeal, the defendant claims error in the prosecutor's closing argument and in the trial judge's refusal to permit cross-examination of John (who was nineteen at the time of the trial) about his arrest for marijuana possession. One of the rape convictions must be reversed because the prosecutor misstated the evidence during closing argument and also urged the jury to speculate on a matter beyond their common experience. We affirm the other rape conviction and the conviction of indecent assault and battery (indictment 9877-CR-2200).

*Background.* The Commonwealth's evidence was as follows. In 1987, John and Anna, together with their sister, Susan, were living with their parents in a church parsonage in Methuen. John was six, Anna was ten, and Susan was seven. Their parents lived in the parsonage as caretakers of the church.

Starting in January, 1987, the children's father joined their mother in a community choral group on Monday evenings from 7:00 P.M. to 9:00 P.M. They hired the defendant's sister, Stephanie, to babysit for their children. At first, Stephanie was the principal caretaker. The defendant would fill in when Stephanie was unavailable, and by September, 1987, the defendant, who was then sixteen, began babysitting for the children more often.

At some point, the defendant began to sexually abuse John. The defendant would send John upstairs to the bathroom or John's bedroom, while the girls remained downstairs. A few minutes later, the defendant would appear, remove his clothes and instruct John to remove his clothes. The defendant would then kiss and fondle John and tell John to kiss and fondle him. The defendant also told John to "suck his penis," and demonstrated what he wanted John to do by performing oral

---

were so instructed, and the verdict slips were specific as to the type of rape charged.

[2]The victims are referred to herein by pseudonyms.

[3]Before trial, an indictment for rape of a child (Susan, John and Anna's sister) was noll prossed by the Commonwealth because Susan could not recall the date of the crime. During trial, the judge allowed the defendant's motion for a required finding of not guilty on a charge of open and gross lewdness and lascivious behavior.

sex on John. John would then perform oral sex on the defendant as he had been instructed to do.

On one occasion, the defendant took John to one of the two stairwells in the house and showed him a photograph of a man and a woman leaning against a railing in a stairwell and having sexual intercourse. He then instructed John to remove his clothes and, when John bent over, anally raped him.

On another occasion, the defendant again showed John a photograph of a man and a woman having sexual intercourse. He then instructed John to lie on his stomach and anally raped him.

The defendant from time to time also asked John's sisters to dance for him and remove their clothes. He would also ask the children to "pair off" and have John lie on top of one of his sisters while the defendant would lie on the other and touch and kiss that sister's body. On one occasion, the defendant exposed his penis to both Anna and Susan.

On several occasions, the defendant lay on top of Anna, removed her bra and nightgown, and kissed her through a pillowcase tied around her mouth. He also kissed her neck and shoulders and thrust back and forth on top of her, with his genital area touching her genital area.

The defendant continued to babysit for the children until an evening in March, 1989, when he and Anna engaged in a fight, after which Anna and Susan locked themselves in a bathroom. The children's mother called to check on the children and heard them screaming and the defendant swearing. When she and her husband returned home, they found the children upset, and they told the defendant that they would not allow him to babysit again.

Some nine years later, in April, 1998, John told his girlfriend and his two best friends that the defendant had abused him. In early May, he also reported the abuse to a school counselor. Then, on June 12, 1998, he reported the abuse to the Methuen police.

Susan reported the abuse to her best friend in seventh grade and then, in January, 1998, to her counselor. In the summer of 1998, after learning that John had reported the abuse to the

police, both Susan and Anna reported to the police that the defendant had abused them.

At trial, the children's mother, John, Susan, and Anna testified to the foregoing events as witnesses for the Commonwealth. Methuen police officer Christine Nicolosi, a trained sexual assault investigator who had performed more than one hundred sexual assault investigations for the Methuen police, testified that she had interviewed John when he reported the abuse in June, 1998, and had also interviewed his mother and Susan and Anna. She also testified that the defendant, who was born on March 31, 1971, was an adult in the eyes of the law at seventeen on March 31, 1988, while he was babysitting for the children.

During his cross-examination of Officer Nicolosi, defense counsel asked her whether the absence of any indication in John's pediatric records of injury to his rectum might indicate that the rapes had never happened. Officer Nicolosi responded: "It might have showed it. It might not have showed it. I'm not an expert on that location." Thereafter, on redirect, the prosecutor questioned Officer Nicolosi as follows:

> Q.: "You had some training at your sexual assault school specifically directed at child sexual abuse. Is that correct?"
>
> A.: "Yes, we did."
>
> Q.: "And did you learn that children may sustain injuries if their genital areas are penetrated?"
>
> A.: "Yes."
>
> Q.: "Did you also learn that children may not sustain injuries, under those circumstances?"
>
> A.: "Yes."

The defendant testified and flatly denied that he had ever sexually assaulted the children. His father testified that the defendant had begun babysitting for the children in the fall of 1986, when he was only fifteen years old, and thereafter babysat for the children only three or four times before he was fired. The defendant's fiancé testified to his reputation for truthfulness. The defendant also introduced in evidence John's pediatric

medical records, which did not indicate that he had suffered any injury to his rectum during the period in question.

1. *Limit on cross-examination.* On the Saturday before the trial was scheduled to begin, John was arrested for possession of marijuana. The defendant claims that he should have been permitted to cross-examine John regarding this arrest in order to show possible bias.

"The confrontation right surely extends to reasonable cross-examination to show bias or prejudice on the part of a witness." *Commonwealth* v. *Santiago*, 54 Mass. App. Ct. 656, 663 (2002). "But to claim the right in a particular case the party needs to make a showing of some likelihood that evidence will be revealed somehow probative of the witness's bias." *Ibid.*, and cases cited.

The defendant made no such showing in this case. To the contrary, John testified at a voir dire the judge held on the matter only that, following his arrest, his mother had been able to obtain a temporary postponement for his arraignment on the charges against him by obtaining a note from a victim/witness advocate that he was required to appear as a witness at the trial of the defendant. He did not testify that he had received any favorable treatment with respect to the charges or promises of such favorable treatment. Nor did the defendant point to any substantial differences between the statements John made to the police in June, 1998, long before John's arrest and subsequent testimony at the defendant's trial. In these circumstances, the judge did not err in preventing the defendant from cross-examining John with respect to his arrest in order to show possible bias. See *Commonwealth* v. *Santiago*, 54 Mass. App. Ct. at 663-664, and cases cited.

The defendant additionally claims for the first time on appeal that he should have been permitted to cross-examine John with respect to his arrest in order to show that John might have been using marijuana at the time of the defendant's trial, thus impairing his competence to testify. It is well-settled, however, that a party "is not permitted to raise an issue before the trial court on a specific ground, and then to present that issue to [the reviewing] court on a different ground." *Commonwealth* v. *Campbell*, 51 Mass. App. Ct. 479, 483 (2001), quoting from *Com-*

*monwealth* v. *Tyree*, 387 Mass. 191, 213 (1982), cert. denied, 459 U.S. 1175 (1983). This is particularly so where the issue — impeachment of a witness for competency — is "well within the [trial] judge's sound discretion." *Commonwealth* v. *Carrion*, 407 Mass. 263, 273 (1990).

2. *Improper closing argument issue.* The defendant contended at trial that John could not have been raped by the defendant because his pediatric records, which were introduced as an exhibit, failed to show that John had suffered any injury in his rectal area. Responding to this contention during her closing, the prosecutor argued:

> "There is something else that is really important in that regard, that I would like to highlight for you, and that is this: Officer Nicolosi, again a certified, trained, experienced sexual-assault investigator, told you that sometimes when children experience genital penetration, *such as anal penetration*, sometimes they have injuries, and sometimes they don't have injuries. That is the information that she gave you. And you can use that information in assessing and evaluating the credibility of [John's] testimony." (Emphasis added.)

Later in her closing argument, the prosecutor further urged the jury to keep in mind that a child's rectum was "flexible enough to accommodate the passage of fairly-large objects." More specifically, the prosecutor stated:

> "We were talking about the issue about whether or not a child would have injuries who had been rectally penetrated. And there was one other point that I wanted to make to you, members of the jury, which is very important. And this is something that you all know, based on your own life experience, and that is that the opening of the rectum is a flexible opening. It is flexible in children and it is flexible in adults. And it is flexible enough to accommodate the passage of fairly-large objects. And that is something that everybody knows, based on their own common experience. It may not be very pleasant to talk about, publicly; but, it is something that you have to think about, when you are assessing and evaluating the evidence in this case."

At the conclusion of the prosecutor's argument the defendant moved for a mistrial on the rape indictments on the ground that the prosecutor had effectively referred to expert testimony that the rectum of a six year old child could be penetrated by a grown male's penis without showing any injury when, in fact, no such expert testimony had been presented.[4] The judge denied this motion, ruling that the prosecutor could properly refer to a fact in the common knowledge of the jury.

The defendant then asked the judge to instruct the jury that, contrary to the prosecutor's argument, there had been no expert testimony that the anus of a six year old is flexible and can accommodate, without injury, a hard object. The judge denied this request after the prosecutor insisted that Officer Nicolosi had in fact given such testimony. Based on Officer Nicolosi's testimony as the prosecutor described it, the judge ruled that he would not give any curative instruction at all, but rather would rely on his normal instruction in his closing charge that the jury should draw only reasonable inferences from the evidence in the case.

In fact, Officer Nicolosi did not testify that a child's rectal area might be penetrated by a hard object and not show any injury. Rather, she stated only in the most general and unspecific manner that children may not sustain injuries if their "genital areas" are penetrated, without reference to rectal areas, as to which she had specifically stated during her cross-examination by the defendant that she was not an expert "in that location."

Nor could the prosecutor properly urge the jury to infer from their own knowledge and experience that a six year old child's rectum could accommodate a male's penis without showing any injury. This was a medical matter plainly beyond the common knowledge of the ordinary layperson and, hence, expert testimony was required before the jury could draw any inference with respect to it. See *Commonwealth* v. *Federico*, 425 Mass. 844, 851 n.13 (1997). Cf. *Canavan's Case*, 432 Mass. 304, 316 (2000).

We recognize that defense counsel himself did not introduce any expert testimony before urging the jury to infer from the absence of physical injury to John's rectal area that no rape had

---

[4]The defendant made no argument as to why the prosecutor's error would have any effect on the indictment for oral rape.

occurred. See *Commonwealth* v. *Bowden,* 379 Mass. 472, 485-486 (1980). However, where, as here, a defendant merely points out an absence of evidence supporting the Commonwealth's case, it is not appropriate for the prosecutor to urge the jury to speculate on a matter beyond their common experience. Rather, the prosecutor should anticipate the defendant's argument and be prepared to present expert testimony if necessary to meet it.

Thus, the prosecutor's argument with respect to the anal rape was improper because she both misstated the evidence, see *Commonwealth* v. *Coren,* 437 Mass. 723, 730 (2002), and then urged the jury to speculate on a matter beyond their common experience. See *Commonwealth* v. *Federico, supra.* Cf. *Commonwealth* v. *Thomas,* 52 Mass. App. Ct. 286, 293 (2001). Moreover, the trial judge erred in failing to give a curative instruction as the defendant requested.[5]

We also conclude that the error cannot be said to be harmless with respect to the defendant's conviction of anal rape. As the Commonwealth conceded at argument, the prosecutor's misstatement of Officer Nicolosi's testimony went to a major point emphasized by the defense and it was compounded by the prosecutor's urging the jury to infer from their own knowledge and experience that what Officer Nicolosi had said was true. Moreover, while the Commonwealth's evidence that the defendant had engaged in ongoing sexual assaults of the children was strong, its evidence that the defendant had actually raped John depended entirely on John's testimony. In these circumstances, "we cannot say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' " *Commonwealth* v. *Thomas, supra* at 293, quoting from *Commonwealth* v. *Peruzzi,* 15 Mass. App. Ct. 437, 445 (1983). See *Commonwealth* v. *Loguidice,* 420 Mass. 453, 456 (1995).

The error, however, was immaterial to the case against the defendant for the oral rape of John; nor did it have anything to

---

[5]We note that, prior to the prosecutor's erroneous reference to Officer Nicolosi's testimony, the judge actually considered instructing the jury that whether injury would or would not be expected to have occurred in the circumstances of this case was a matter requiring expert testimony. The prosecutor dissuaded the judge from giving this instruction, however, by referring to Officer Nicolosi's testimony.

do with the Commonwealth's case against the defendant for indecent assault and battery upon Anna. We, therefore, conclude that reversal of those convictions is not required. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 517-519 (1987).

*Conclusion.* The judgments on indictments 9877-CR-2197 and 9877-CR-2200 are affirmed. The judgment on indictment 9877-CR-2198 is reversed and the verdict is set aside.

*So ordered.*