## Commonwealth *vs.* Angel Caraballo.

No. 10-P-2152.

Hampden. January 17, 2012. - April 4, 2012.

Present: Green, Brown, & Agnes, JJ.

*Controlled Substances. Witness,* Expert. *Evidence,* Expert opinion, Constructive possession.

At the trial of indictments charging violations of the controlled substances laws, no substantial risk of a miscarriage of justice arose from a police detective's expert testimony that characterized certain people waiting outside a location where drugs were being sold as people who appeared to be drug dependent, where the detective did not opine that the defendant was a drug dealer or express an opinion about the defendant's guilt. [538-540]

At the trial of indictments charging violations of the controlled substances laws, there was sufficient evidence supporting the conclusion that the defendant, who possessed heroin on his person at the time of his arrest, constructively possessed a larger quantity of heroin found in a woman's pocketbook located in the apartment where he was arrested [540-542]; further, there was sufficient evidence to support the conclusion that, taken alone, the five bags of heroin found on his person established his intent to distribute that drug [542]; finally, sufficient evidence existed to support the defendant's constructive possession of the pills found in the drawer of the dresser in which his correspondence was located [542-543].

Indictments found and returned in the Superior Court Department on July 29, 2009.

The cases were tried before *Judd J. Carhart,* J.

*Sarah E. Dolven* for the defendant.

*Deborah D. Ahlstrom,* Assistant District Attorney, for the Commonwealth.

Agnes, J. The defendant was convicted of one count of possession of a class A substance, heroin, with intent to distribute (subsequent offense), pursuant to G. L. c. 94C, § 32(*b*), and on an indictment charging trafficking in a controlled substance (opium or a derivative), G. L. c. 94C, § 32E(*c*)(1), the defend-

ant was convicted of the lesser included offense of possession of a class B substance, pills containing a combination of buprenorphine and naloxone, collectively known as Suboxone. On appeal, the defendant challenges the admission of expert witness testimony and the sufficiency of the evidence. For the reasons that follow, we affirm.

*Factual background.* On June 7, 2009, during an ongoing investigation of narcotics distribution, Springfield Detective Jamie Bruno observed the defendant arriving at 2616 Main Street, pushing a grocery cart, with a few other individuals. The only apartment at 2616 Main Street that appeared to be occupied was on the second floor. This apartment was the focus of the investigation. The police observed several individuals standing about on the front steps of the building. The defendant had a short conversation with these people, after which they followed him into the building. The same people left two to three minutes later.

Detective Bruno testified that these individuals "appeared to be drug-dependent individuals." Detective Bruno then testified before the jury that he had ten years' experience as a narcotics investigator, including surveillances of drug sellers and buyers as well as direct participation in drug transactions as an undercover officer. When asked to describe the "pattern" of street sales of narcotics, he described his preparations for undercover work, as follows: "[Y]ou begin to let your hair grow, become disheveled looking; you know, you wear old ratty clothes, and you try to blend into the environment that you may be working." He added that "you look sick, you try to make yourself have that appearance of a disheveled person who appears to be drug dependent." Detective Bruno also explained that it was necessary to learn "street terminology," and to learn the locations where drugs are sold in order to find those who are selling drugs. When asked to further describe the people waiting outside 2616 Main Street, Detective Bruno testified, "They looked ill, very sickly. People specifically that are drug dependent to heroin have a very sick appearance to them. They cough a lot. They are very disheveled, unkempt, and that's what led me to believe that they perhaps were customers looking to purchase illegal narcotics." Finally, when asked about whether the defendant's

appearance was like that of the other people waiting outside 2616 Main Street, Detective Bruno said, "No."

The investigation of 2616 Main Street culminated in the issuance of a search warrant obtained by Detective Bruno, executed on June 15, 2009.[1] Although the officers knocked and announced their presence, they had to use a battering ram to gain entry. Upon entering the apartment, one of the officers located the defendant in the kitchen and handcuffed him. The police also arrested two other people who were in the apartment, a man and a woman. The defendant stated that he had five bags of heroin on his person, which the officer recovered. The defendant also stated that there was no other heroin in the apartment. However, another officer located eighty-six bags of heroin and a solid chunk of heroin weighing six grams in a woman's pocketbook located on top of the refrigerator in the kitchen. There was evidence that the packaging of the five bags of heroin found on the defendant's person and that of the eighty-six bags of heroin found in the woman's pocketbook were similar in appearance.

One of the officers found correspondence addressed to the defendant at 2616 Main Street on a dresser in the middle bedroom. There were items of men's and women's clothing in this bedroom. On top of the same dresser, there were items used in the packaging and mixing of heroin, including a box of plastic baggies similar in appearance to those holding the heroin found on the defendant's person and in the woman's pocketbook, a digital scale, a sifter, and rubber bands. In addition, what was described as a "drug ledger" was found on top of the dresser. An unmarked bottle of pills, later determined to contain Suboxone, a class B substance, was found in the top drawer of that dresser. Finally, a small safe, which could be opened with a key found in the woman's pocketbook, was found in the bedroom. The safe contained $4,296 in cash.

*Discussion. 1. Detective Bruno's testimony.* The defendant contends that Detective Bruno's testimony that the individuals waiting outside 2616 Main Street when the defendant arrived

---

[1]On one occasion during his surveillance prior to the execution of the warrant, Detective Bruno observed the defendant come to the window of the apartment and look up and down the street for several minutes.

"appeared to be drug-dependent," while indicating that the defendant did not share that appearance, was impermissible profiling testimony because it described the characteristics of perpetrators of a crime and expressed an opinion about the defendant's guilt. Because the issue was waived at trial, we review solely for a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Vallejo*, 455 Mass. 72, 81 n.9 (2009).[2]

"The admission of [expert testimony] is largely within the discretion of the trial judge and he will be reversed only where the admission constitutes an abuse of discretion or error of law." *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991). See Mass. G. Evid. § 702 & note, at 206 (2011). "[E]xpert testimony may not be admitted to profile or describe the typical attributes of the perpetrators of crimes." *Commonwealth* v. *Roche*, 44 Mass. App. Ct. 372, 380 (1998), quoting from *Commonwealth* v. *Goetzendanner*, 42 Mass. App. Ct. 637, 644 (1997).[3] The vice in such testimony is that criminal profile testimony "is nothing more than an expert's opinion as to certain characteristics which are common to some or most of the individuals who commit particular crimes. [Such e]vidence . . . does not meet the relevancy test, because the mere fact that a defendant fits the profile does not tend to prove that [he committed the crime charged]." *Commonwealth* v. *Frias*, 47 Mass. App. Ct. 293, 296 (1999). However, a police officer is permitted to rely on his training and experience and to give testimony that is explanatory and nonconclusory about the common characteristics of street-level narcotics transactions when it will be of assistance to the jury. See, e.g., *Commonwealth*

---

[2]Although the defendant timely objected to this testimony, a subsequent discussion at sidebar revealed that the objection was to the foundation of the officer's testimony rather than the grounds pressed on appeal. After sidebar, the Commonwealth laid the foundation for the testimony. The defendant did not object again or move to strike. In these circumstances, we consider the issue waived. See *Commonwealth* v. *Doyle*, 67 Mass. App. Ct. 846, 861-862 (2006). See also *Commonwealth* v. *Womack*, 457 Mass. 268, 272-273 (2010) (necessity of motion to strike in addition to timely objection).

[3]In *Roche*, where the defendant was charged with assaulting his girlfriend, we observed that "although the expert did not use the word 'batterer,' she did testify extensively regarding the common characteristics of an 'abusive male.' This was error because it invited the jury to conclude that because the defendant fit the profile described by the expert, it is more likely than not that the defendant committed the crimes charged." 44 Mass. App. Ct. at 380.

v. *Johnson*, 410 Mass. at 202, and cases cited. Here, Detective Bruno's testimony concerned the characteristics of drug-dependent heroin users[4] he had encountered on the streets of Springfield, not the characteristics of a defendant charged as a heroin dealer. Detective Bruno did not opine that the defendant was a drug dealer. Contrast *Commonwealth* v. *Woods*, 419 Mass. 366, 368, 375 (1995).

Detective Bruno's testimony also did not express an opinion about the defendant's guilt. It is well established that a witness "may not proffer an expert opinion as to the guilt or innocence of the defendant." *Commonwealth* v. *Cordero*, 34 Mass. App. Ct. 923, 924 (1993). The fact that Detective Bruno's testimony (i.e., that the defendant did not exhibit the characteristics of the drug-dependent individuals he had encountered on the streets of Springfield) provided some support for a conclusion that the defendant was a drug dealer rather than a user is precisely why it was helpful to the jury. See *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 581 (1998). However, it was the combined effect of this testimony, along with the fact that the defendant used a key that was in his possession to let the people waiting outside 2616 Main Street into the building, and that these people quickly left the apartment while the defendant remained behind (conduct observed by the police on more than one occasion), that supports the inference sought by the Commonwealth that the defendant was involved in selling drugs. Detective Bruno's testimony did not interfere with the jury's fact-finding role. See Mass. G. Evid. § 704 & note, at 218-219, and cases cited. Thus, there was no error in Detective Bruno's characterization of certain people waiting outside a location where drugs were being sold as people who appeared to be drug dependent.

2. *Sufficiency of the evidence.* The defendant argues that there

---

[4]A "drug dependent person" is defined for other purposes in G. L. c. 111E, § 1, as "a person who is unable to function effectively" due to the use of nonprescribed, narcotic drugs, among others. Drug dependency for purposes of determining eligibility for the diversion program established under G. L. c. 111E, § 10, is a diagnosis provided by a medical professional. In this case it is clear that Detective Bruno's opinion did not purport to be a medical diagnosis but simply described the characteristics of a population he had encountered as an undercover officer on the street. See, e.g., *Commonwealth* v. *Thomas*, 52 Mass. App. Ct. 286, 288-289 (2001).

was insufficient evidence of constructive possession to permit his conviction on either count. On a claim of insufficiency of the evidence, we review the evidence in the light most favorable to the Commonwealth to determine whether a rational trier of fact could find all required elements beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979). Constructive possession requires a showing of "knowledge coupled with the ability and intention to exercise dominion and control." *Commonwealth* v. *Gonzalez*, 452 Mass. 142, 146 (2008), quoting from *Commonwealth* v. *Boria*, 440 Mass. 416, 418 (2003).

a. *Possession of heroin with intent to distribute.* It is undisputed that the defendant possessed the heroin on his person at the time of his arrest. However, the defendant claims there was insufficient evidence that he constructively possessed the larger quantity of heroin found in the woman's pocketbook. He further argues that, taken alone, the five bags of heroin found on his person established only his possession of the bags, and not his intent to distribute heroin.

Considering the evidence as a whole, the jury could draw reasonable and permissible inferences supporting the conclusion that the defendant constructively possessed the larger quantity of drugs found in the pocketbook. Correspondence addressed to the defendant at 2616 Main Street was found on a dresser in the middle bedroom. Paraphernalia used to cut and package drugs, but not to smoke or consume drugs, as well as what was described as a drug ledger were found on top of the same dresser. See *Commonwealth* v. *Gonzalez*, 42 Mass. App. Ct. 235, 239-240 (1997). See also *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 498-499 (1984).[5] Contrast *Commonwealth* v. *Sespedes*, 442 Mass. 95 (2004). The evidence was that the bags found on top of the dresser, and the bags containing the heroin found on the defendant's person and in the pocketbook, were similar in appearance. "While a defendant's presence in an area where

[5]Additionally, the jury could consider the defendant's statement that the police would not find drugs anywhere in the apartment other than on his person as a false statement made with the intent to mislead them and thus evidence of consciousness of guilt. See *Commonwealth* v. *Robles*, 423 Mass. 62, 71 (1996).

contraband is found is not enough, . . . 'presence, supplemented by other incriminating evidence, will serve to tip the scale in favor of sufficiency.' " *Commonwealth* v. *Clarke*, 44 Mass. App. Ct. 502, 505 (1998), quoting from *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 618 (1990), *S.C.*, 410 Mass. 1005 (1991). Based on this evidence, a rational fact finder could infer that the defendant participated in the drug trade occurring in the apartment. See *Commonwealth* v. *Lee*, 2 Mass. App. Ct. 700, 704 (1974); *Commonwealth* v. *Figueroa*, 74 Mass. App. Ct. 784, 786 (2009), reversed on other grounds, 77 Mass. App. Ct. 1117 (2010). This would, in turn, permit the jury to conclude that the defendant had knowledge of and the intent and ability to control the large stash of drugs found in the apartment, namely, the drugs located in the woman's pocketbook.

Alternatively, the evidence of the drugs found on the defendant's person, namely, five individually wrapped bags of heroin, when considered along with the other evidence presented at trial,[6] was sufficient to warrant the jury finding him guilty of possession with intent to distribute heroin apart from a consideration of the heroin found in the pocketbook. See *Commonwealth* v. *Wilson*, 441 Mass. 390, 401 (2004); *Commonwealth* v. *Bush*, 71 Mass. App. Ct. 130, 136 (2008).

b. *Possession of pills.* The defendant likewise argues that there was insufficient evidence to support his constructive possession of the pills found in the drawer of the dresser on which his correspondence was located. "When contraband is found in a dwelling shared by a defendant and one or more other persons, a finder of fact may properly infer that the defendant is in possession of the contraband (not necessarily exclusive possession) from evidence that the contraband was found in proximity to personal effects of the defendant in areas of the dwelling, such

---

[6]The additional evidence of intent to distribute includes the conversation between the defendant and the people who appeared to be drug dependent who were waiting outside the apartment, who were admitted into the apartment by the defendant, and who then left a short time thereafter; the police observation of the defendant making a searching observation of the street from the apartment window; the more than $4,000 in cash found in the safe; and the presence of the drug paraphernalia, including the drug ledger book, in a bedroom where personal papers belonging to the defendant and male clothing were found, along with the fact that implements for injecting or ingesting heroin were not found in the apartment.

as a bedroom or closet, to which other evidence indicates the defendant has a particular relationship." *Commonwealth* v. *Farnsworth*, 76 Mass. App. Ct. 87, 99 (2010), quoting from *Commonwealth* v. *Rarick*, 23 Mass. App. Ct. 912, 912 (1986). A rational fact finder could infer that the defendant knew of the pills and had the intent and ability to control them, based on the location of the pills in the same dresser on which letters addressed to the defendant were found. See *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. at 498-499. See also *Commonwealth* v. *Nichols*, 4 Mass. App. Ct. 606, 613 (1976).

*Judgments affirmed.*