NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-505

COMMONWEALTH

vs.

PASTOR PADILLA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury-waived trial, a Superior Court judge found the defendant guilty of one count of distributing heroin.[1] On appeal, the defendant argues that (1) the motion judge erred in denying his motion to suppress, and (2) the trial judge erred in admitting certain testimony. We affirm.

Background. The charge for which the defendant was convicted was based on an incident that Woburn police officers observed outside of a residence that they had under surveillance. After a car the defendant was driving stopped at the residence, two individuals from inside the home approached the car and quickly spoke to the defendant. The police observed

---

[1] The Commonwealth charged this as a second or subsequent offense. The defendant pleaded guilty to the enhancement portion of the indictment. The Commonwealth nol prossed two additional counts.

one of the residents "walk up to the car to the passenger side, crouch down, lean forward, a hand go in, a hand come out and go into a pocket." Concluding that they had just observed a hand-to-hand sale of narcotics, the police stopped the car. Then, after the individuals from the house admitted that they had just purchased three grams of heroin for $150, the police arrested the defendant. An inventory of the car's contents revealed $150 in cash in one of the car's cup holders.

Discussion. 1. Motion to suppress. "Police may effect a motor vehicle stop based on reasonable suspicion of criminal activity." Commonwealth v. Barreto, 483 Mass. 716, 718 (2019). Arguing that the police lacked reasonable suspicion to stop the car under the circumstances present here, the defendant moved to suppress the discovery of the cash and any other evidence found in the car.

In reviewing the denial of that motion, we accept the motion judge's subsidiary findings of fact absent clear error, but we independently review his ultimate findings and conclusions of law. See Commonwealth v. Tejada, 484 Mass. 1, 7 (2020). Having done so, we agree with the motion judge that the police had reasonable suspicion to stop the car.

Where, as is the case here, the basis for reasonable suspicion is a perceived drug transaction, "[i]t is not necessary . . . that the police officer observe an exchange of

items or actually see drugs or cash, but it is necessary that the observations by the police occur in a factual context that points to criminal activity." Commonwealth v. Kearse, 97 Mass. App. Ct. 297, 302 (2020). See Commonwealth v. Stewart, 469 Mass. 257, 260-261 (2014). The circumstances present here provided ample support for the police to believe that they had witnessed a hand-to-hand sale of illegal narcotics. The transaction occurred directly in front of a residence that the officers had been surveilling due to neighbors' complaints of traffic associated with the drug trade that had "ramped up" as recently as "that day" and "the week prior." See Commonwealth v. Freeman, 87 Mass. App. Ct. 448, 452 (2015) ("reports of 'increased drug activity,' even if anonymous, are sufficient to contribute to the circumstantial evidence that a drug transaction had occurred"). The officers also knew that someone at the residence had suffered a drug overdose there within the last eight months.[2] See Commonwealth v. Clark, 65 Mass. App. Ct. 39, 45 (2005) (fact that police knew participants to be drug dealers or users relevant factor). Moreover, the police knew

---

[2] Putting aside that the motion judge may well have credited evidence of additional drug-related complaints and reports of more recent overdoses at the residence, we are unpersuaded by the defendant's argument that the police relied on information that was unduly stale. In any event, the knowledge of the prior incidents served merely to contextualize what the police were directly observing at the scene; it was not the primary basis of their decision to detain the defendant.

that within the prior year, the very car that the defendant was driving had been involved in two drug-related incidents, at least one of which led to an arrest.  With these contextual circumstances in mind, the experienced narcotics officers had ample justification to believe that the apparent hand-to-hand interchange they observed was an illegal narcotics transaction.  Contrast Barreto, 483 Mass. at 720-721 (no reasonable suspicion where officers did not directly observe drug transaction and the location, buyer, and seller were not associated with prior drug activity).

2.  Evidentiary issue.  At trial, one of the officers testified that at the scene he relayed to his fellow officers that he "saw a hand-to-hand take place."  The defendant did not object to this testimony.  On appeal, he claims that this characterization amounted to improper expert testimony on an ultimate issue in the case, that is, whether an illegal transaction had occurred.  See Commonwealth v. Canty, 466 Mass. 535, 541 (2013) (in operating under influence case, officer may testify that driver appeared intoxicated, but not that he was driving under influence).  We disagree.

We view the testimony as offering explanatory background for what occurred at the scene, not an opinion that the defendant's conduct amounted to a criminal offense.  Moreover, police officers are given some latitude in applying their

4

experience and training to help illuminate their observations.
See, e.g., Commonwealth v. Caraballo, 81 Mass. App. Ct. 536, 539
(2012) ("police officer is permitted to rely on his training and
experience and to give testimony that is explanatory and
nonconclusory about the common characteristics of street-level
narcotics transactions when it will be of assistance to the
[fact finder]").  In addition, because this was a bench trial,
any concerns that the fact finder would be unduly influenced by
a witness's expression of an opinion as to a defendant's guilt
is, at a minimum, much less present.  We not only presume that
the trial judge understood that it was ultimately his job to
determine whether the defendant had distributed heroin, but
also, comments the judge made during the trial demonstrate that
he was particularly sensitive to this issue.[3]

Finally, even if the testimony were viewed as improper, it
did not create a substantial risk of a miscarriage of justice.
The evidence against the defendant was quite strong.  For
example, the testimony from the two individuals that they had
just purchased three grams of heroin from the defendant for $150
was corroborated by the discovery of the $150 in cash found in

---

[3] During cross-examination, the officer continued to refer to his
having observed a "hand-to-hand."  This prompted the
Commonwealth itself to object.  The judge assured the
Commonwealth that he "c[ould] ignore [the characterizations],"
while adding that "if a jury were here, there would be more of a
caution."

5

the car's cupholder.  In addition, defense counsel conducted an aggressive cross-examination of exactly what the testifying officer could observe from his vantage point.  We are confident that the officer's reference to having seen a "hand-to-hand" did not sway the judge's finding.  See Commonwealth v. Soto, 45 Mass. App. Ct. 109, 114 (1998) ("unlikely" that officer's unobjected-to testimony that he believed that he had just seen drug transaction would, on its own, create substantial risk of miscarriage of justice).

Judgment affirmed.

By the Court (Milkey, Blake & Sacks, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered:  September 22, 2023.

---

[4] The panelists are listed in order of seniority.