NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-190                                          Appeals Court

COMMONWEALTH  vs.  DANIEL D. TAVARES.

No. 14-P-190.

Barnstable.      December 9, 2014. - June 5, 2015.

Present:  Cypher, Wolohojian, & Blake, JJ.

Uttering Forged Instrument.  Tendering a False Note.  Larceny.
    False Pretenses.  Practice, Criminal, Required finding.
    Evidence, Inference, Identity.

Complaints received and sworn to in the Barnstable Division
of the District Court Department on October 31, 2011.

The cases were tried before Joan E. Lynch, J.

Kevin S. Nixon for the defendant.
Julia K. Holler, Assistant District Attorney, for the
Commonwealth.

CYPHER, J.  A jury convicted the defendant, Daniel D.

Tavares, of possessing counterfeit currency, uttering a

counterfeit note, and larceny by false pretenses of property not

exceeding $250 in value.  The defendant appeals and asks us to

hold that the judge erred by denying the defendant's motion for

a required finding of not guilty.  The defendant argues, as he

did below, that there was insufficient evidence of identity, when viewed in the light most favorable to the Commonwealth, to support the conclusion beyond a reasonable doubt that the defendant was the person who had uttered a counterfeit note and committed larceny by false pretenses.  The defendant also argues, for the first time on appeal, that there was insufficient evidence to prove that he knew the $100 bills in question were counterfeit.[1]  We disagree.

1.  Factual background.  The jury could have found the following facts.  On October 30, 2011, at approximately 9:00 P.M., a man asked for $30 of gasoline at West Main Gas, a gasoline station in Barnstable.  The man was driving a black sport utility vehicle (SUV).  There was a woman in the passenger seat.

The gasoline station employee, Sherif Nakhla, pumped the gasoline as requested.  The man had a $100 bill in his hand. Nakhla gave the man $70 in cash, and then the man handed Nakhla the $100 bill.  Nakhla examined the $100 bill and realized "it d[id]n't look like money at all."  Nakhla told the man that the $100 bill was not real.  The man responded by saying, "I don't

---

[1] Although the defendant did not make that contention below, or make any other required finding argument on the charge of possessing counterfeit currency, we examine the claim on appeal because a conviction on insufficient evidence inherently presents a substantial risk of a miscarriage of justice.  See Commonwealth v. Joyner, 467 Mass. 176, 180 (2014).

know, man," and then drove off. Nakhla tried to catch the SUV but was unable to do so. At trial Nakhla did not identify the defendant as the gasoline station customer, and provided only a very general physical description.[2]

Meanwhile, after the SUV drove away from the gasoline station, at approximately 12:37 A.M. on October 31, 2011, Barnstable police Officer Carl Hill initiated a traffic stop of an SUV in Hyannis. The vehicle failed to stop and drove on a bike path, speeding away from Officer Hill. Officer Hill eventually stopped the SUV in Hyannis, approximately one mile from West Main Gas.

When the stop was made, a woman was driving the SUV. Other officers arrived on scene, including Barnstable police Officer Daniel Ruth. The defendant, who was identified at trial by both Officer Ruth and Officer Hill, was seated in the passenger seat. Officer Hill spoke with the woman, while Officer Ruth approached the defendant on the passenger side of the vehicle. Ruth saw the defendant reach down to his right side. Ruth did not know if the defendant was hiding something. The defendant began yelling obscenities at Ruth, including calling Ruth "the 'f-ing devil.'" Ruth did not see anything in the defendant's hand. Ruth asked the defendant to step out of the vehicle. Ruth

_____

[2] Nakhla kept the counterfeit bill separate from the night's other receipts and gave it to his boss the next day. Nakhla and his boss then brought the bill to the police together.

smelled an odor of alcohol on the defendant's breath.  The defendant was also unsteady on his feet.  His eyes were bloodshot.  Ruth placed the defendant in handcuffs in protective custody.

While pat frisking the defendant, Ruth found a $100 bill in the defendant's pocket.  Another $100 bill had been discovered in the center console of the vehicle, between the female driver and the defendant.  Ruth noticed that the two bills were obviously counterfeit.  The bills had been glued together with sheets of paper.  The color of the bills was "off."  The serial number of the bill found in the center console was the same as the serial number of the bill found in the defendant's pocket.

As a result of investigation, Ruth learned of the other counterfeit $100 bill that had been used that night at the gasoline station.  That bill was identical, including the serial number, to the two bills recovered from the defendant.

The jury were able to examine the three $100 bills, which were admitted as evidence, and determine their validity.  On appeal, the Commonwealth filed a motion to transmit the exhibits so that the panel could examine the bills for itself.  After doing so, the panel concludes that any rational jury would have found the bills so beyond what would constitute the appearance and feel of legitimate bills as to be patently counterfeit.  The

counterfeit bills most obviously consist of two sheets of paper strips glued together -- and poorly at that.

2.  Sufficiency of the evidence.  We must review the evidence in the light most favorable to the Commonwealth to determine if any rational fact finder could have found the essential elements of the crimes charged beyond a reasonable doubt from the evidence submitted.  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).[3]  "Circumstantial evidence is competent to establish guilt beyond a reasonable doubt."  Commonwealth v. Murphy, 70 Mass. App. Ct. 774, 777 (2007), quoting from Commonwealth v. Merola, 405 Mass. 529, 533 (1989).  Circumstantial evidence may be coupled with "inferences drawn therefrom that appear reasonable and not overly remote" to establish guilt.  Commonwealth v. Dussault, 71 Mass. App. Ct. 542, 546 (2008), quoting from Commonwealth v. Andrews, 427 Mass. 434, 440 (1998).  Inferences made by the jury need only be "reasonable and possible," not "necessary or inescapable."  Commonwealth v. Casale, 381 Mass. 167, 173 (1980), citing Commonwealth v. Beckett, 373 Mass. 329, 341 (1977).  Compare Commonwealth v. Oyewole, 470 Mass. 1015, 1016 (2014) (Commonwealth did not provide evidence to support any reasonable

_____

[3] Because the defendant here presented no evidence after the Commonwealth rested, there was no possible deterioration of the Commonwealth's case.  See Commonwealth v. O'Laughlin, 446 Mass. 188, 203-204 (2006).

and possible inferences satisfying element of offense that defendant had been notified of suspension or revocation of driver's license); Commonwealth v. Simpkins, 470 Mass. 458, 461-462 (2015) (mere presence of white Ford Taurus automobile at both incidents at issue may have shown some causal link between them, but that was not enough to suggest defendant's participation in either incident, even if it were assumed that he rode in vehicle, because "such an inferential leap asks too much" of rational fact finder).

In this appeal, the defendant raises two sufficiency challenges. First, regarding the charges of uttering and larceny by false pretenses, he contends the evidence was inadequate to identify him as the gasoline station customer who passed the counterfeit $100 bill and made away with gasoline and cash in exchange. Second, on those counts as well as possessing counterfeit currency, the defendant argues the evidence could not support an inference that he knew the bills in question were counterfeit.[4] We address each point in turn.

---

[4] It is an element of uttering under G. L. c. 267, § 10, that the defendant act "knowing the [instrument] to be false, altered, forged or counterfeit." Likewise, the crime of possession of a counterfeit bill or note under G. L. c. 267, § 12, requires the possessor to "know[] the same to be false, forged or counterfeit." That knowledge is also needed here for the charge of larceny by false pretenses, G. L. c. 266, § 34, as appearing in St. 2010, c. 258, § 10 ("Whoever, with intent to defraud and by a false pretense, induces another to part with

a.  Identity.  The evidence showed that the defendant possessed one false $100 bill in his pocket and constructively possessed another such bill within arm's reach in the vehicle console.  As the Commonwealth points out, both of these bills were identical to the counterfeit $100 bill used to buy $30 worth of gasoline at West Main Gas.  The bills' identical nature extended to being manufactured in the same manner, by gluing two pieces of paper together.  In addition, because all three bills bore the same serial number, they had plainly all been reproduced from the same original bill.

The evidence also showed that the defendant possessed these bills within several hours of the purchase at West Main Gas with a counterfeit $100 bill.  Both incidents were approximately one mile in distance from each other.  Last, the vehicle driven in both instances was an SUV and there were two parties inside -- a man and a woman.

From this evidence, and considering the totality of the circumstances, a fact finder rationally could have inferred that the incidents at issue were related.  Because both police officers identified the defendant as the man at the traffic stop, a fact finder could also have inferred that the defendant was the same man who used the counterfeit $100 bill to purchase

property of any kind or with any of [certain] benefits . . . shall be guilty of larceny" [emphasis supplied]).

gasoline at West Main Gas.  In light of the circumstantial evidence here, the jury could properly draw the inferences needed to find the identity of the defendant in the incidents at issue beyond a reasonable doubt.  Compare Commonwealth v. Henault, 54 Mass. App. Ct. 8, 11-13 (2002) (circumstantial evidence was sufficient).  The judge did not err in denying the defendant's motion for a required finding of not guilty.

b.  Knowledge.  Knowledge is a question of fact, and proof is frequently made by inference from the facts and circumstances developed at trial.  Commonwealth v. Casale, 381 Mass. at 173, citing Commonwealth v. Sandler, 368 Mass. 729, 741 (1975), and Commonwealth v. Holiday, 349 Mass. 126, 128 (1965).

Here, the jury reasonably could have inferred from the circumstantial evidence and the conduct of the defendant that he knew the $100 bills were counterfeit.  See Commonwealth v. Murphy, 70 Mass. App. Ct. 774, 776-778 (2007) (circumstantial evidence, when considered in totality, gave rise to inference that defendant knew bills were counterfeit); United States v. Rice, 652 F.2d 521, 526 (5th Cir. 1981).  As noted above, the bills were patently fake in appearance, and the jury could use their own observations of the bills, which were in evidence, to infer the defendant would have known they were fake.

The evidence was sufficient to establish that (1) counterfeit bills were possessed and passed by the defendant;

(2) the bills were poor quality counterfeits; (3) the defendant used one such bill to purchase gasoline, then immediately drove away when its authenticity was challenged (displaying consciousness of guilt); (4) the counterfeit bills recovered from the defendant's pocket and the vehicle console were identical to the one used to purchase gasoline; and (5) instead of using bills of smaller denomination, the defendant used a comparatively large bill ($100) to make a comparatively smaller ($30) purchase, see Murphy, supra at 777-778, citing Rice, supra.  From this evidence, a rational trier of fact could have concluded beyond a reasonable doubt that the defendant knew the bill he passed and the bills he possessed were counterfeit.  On the issue of knowledge we conclude no required finding was warranted.

Judgments affirmed.