NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1547                                            Appeals Court

COMMONWEALTH  vs.  RYAN COATES.

No. 14-P-1547.

Bristol.      March 9, 2016. - July 15, 2016.

Present:  Cypher, Cohen, & Neyman, JJ.


Indecent Assault and Battery.  Obscenity, Dissemination of
     matter harmful to minor.  Practice, Criminal, Required
     finding, Identification of defendant in courtroom.
     Evidence, Identification, Expert opinion, Relevancy and
     materiality.  Witness, Expert.  Identification.  Internet.


     Indictments found and returned in the Superior Court
Department on June 21, 2012 and August 9, 2012.

     The cases were tried before D. Lloyd Macdonald, J.


     Alexei Tymoczko for the defendant.
     Shoshana Stern, Assistant District Attorney, for the
Commonwealth.


     CYPHER, J.  A jury convicted the defendant, Ryan Coates, of

three counts of indecent assault and battery on a child under

the age of fourteen, see G. L. c. 265, § 13B, and one count of

disseminating matter harmful to a minor, see G. L. c. 272, § 28.

On appeal, the defendant argues that the judge erred in

excluding expert testimony that the defendant's personality was inconsistent with the profile of a sex abuser, the Commonwealth's graphic description of pornography was unduly prejudicial and created a substantial risk of a miscarriage of justice, and the Commonwealth presented insufficient evidence of identity to support the conclusion beyond a reasonable doubt that the defendant was the person who committed the indecent assaults and batteries.[1]  Finding no merit in the defendant's assertions, we affirm.

Background.  We summarize the facts that the jury could have found, reserving some details for later discussion of the issues raised by the defendant.

The victim, A.E., was five years old at the time of trial. When A.E. was two years old, the defendant, who was her mother's boy friend, moved in with her and her mother.  The defendant was regarded as a father figure to A.E.; the three ate meals together and went on family outings; and the defendant shared parenting duties with A.E.'s mother, putting A.E. to bed at night, picking her up from day care, assisting in her toilet training, and babysitting her when her mother was not at home.

Sometime between December, 2009, and May, 2012, before A.E. was toilet trained, the defendant began to sexually assault her.

---

[1] The defendant asserts also that his trial counsel was ineffective for failing to object to the only evidence of the identity of the defendant as the perpetrator.

On occasions when A.E.'s mother was not at home, the defendant touched A.E.'s anus with his penis and stood behind her, rocking back and forth.[2] These incidents took place multiple times and at different locations in the house, "[s]ometimes upstairs" in the mother's bedroom, "and sometimes in the living room." On one occasion, A.E. sat on the couch in the living room with the defendant and watched a video recording on the computer showing a naked man "massaging" a naked woman with his penis. After watching the recording, the defendant performed the same acts on A.E. On another occasion, as A.E. lay on her mother's bed watching television, the defendant tucked a pillow under her chin and then stood behind her, "[g]oing back and forth," with his hands placed "[o]n [her] bum." A.E. later told her mother that "her bum was all sticky and she didn't like it and [the defendant] had to wipe her." A.E. testified that the defendant's "massaging" hurt her and made her sad, and that she cried and told him to stop.

---

[2] Evidence conflicted as to whether penetration occurred. On the stand, A.E. testified that the defendant's penis was inside her anus. However, in the forensic interview, the recording of which was not made part of the appellate record, A.E. said that the defendant's penis was on the outside. In addition, the examining physician found no physical evidence of trauma. This factual ambiguity may be reflected in the jury's determination that the defendant was guilty of the lesser included offense of indecent assault and battery on a child under the age of fourteen.

When A.E. was four years old, she reported the abuse to her mother, who testified at trial as the first complaint witness. According to the mother's testimony, on May 9, 2012, after she congratulated her daughter for using the toilet and wiping herself, A.E. responded, "[The defendant] would be proud of me," and proceeded to tell her mother that "[the defendant] massaged [her] bum with his pee-pee to get the poop out." To illustrate, A.E. made a humping motion and said, "One time [her] bum hit his stomach." After hearing A.E.'s account, her mother took her over to a friend's house to spend the night away from the defendant. The following day, A.E.'s mother told the defendant to leave the family's home, and A.E. did not see the defendant again until more than one year later, on the day of trial.

Sufficiency of identity evidence. The defendant argues that there was insufficient evidence of his identity as the assailant to support his conviction of the three counts of indecent assault and battery. We review any error for a substantial risk of miscarriage of justice. Commonwealth v. Doty, 88 Mass. App. Ct. 195, 198 (2015).

On a claim of insufficient evidence, we review the evidence in the light most favorable to the Commonwealth to determine whether a rational juror could find all of the elements of the charged offense beyond a reasonable doubt. Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). "Circumstantial

evidence is competent to establish guilt beyond a reasonable doubt." Commonwealth v. Murphy, 70 Mass. App. Ct. 774, 777 (2007), quoting from Commonwealth v. Merola, 405 Mass. 529, 533 (1989). "An inference drawn from circumstantial evidence 'need only be reasonable and possible; it need not be necessary or inescapable.'" Ibid., quoting from Commonwealth v. Merola, supra. "Circumstantial evidence may be coupled with 'inferences drawn therefrom that appear reasonable and not overly remote' to establish guilt." Commonwealth v. Tavares, 87 Mass. App. Ct. 471, 473 (2015), quoting from Commonwealth v. Dussault, 71 Mass. App. Ct. 542, 546 (2008).

The defendant's sufficiency challenge is based on A.E.'s failure to identify the defendant in the court room as the person about whose indecent assault and battery she was testifying.[3] The Commonwealth was required to prove that the defendant, Ryan Coates, was the same Ryan named by A.E. as her assailant. See Commonwealth v. Koney, 421 Mass. 295, 301-302 (1995). "[B]ald identity of name without confirmatory facts or

_____

[3] There was evidence that A.E. was five years old at the time of trial, that one year had passed since she last saw the defendant, that the defendant wore a beard when he lived with A.E. and her mother, and that he appeared at trial clean-shaven. The jury were entitled to consider A.E.'s failure to identify the defendant in their assessment of her credibility, and reasonably could have inferred that her inability to provide an in-court identification did not preclude the defendant's identity as the assailant. See Commonwealth v. Johnson, 470 Mass. 389, 396 (2015).

circumstances is insufficient to prove identity of person." Commonwealth v. Doe, 8 Mass. App. Ct. 297, 299 (1979). "Although very slight evidence might have been enough, at least something more than identity of names was necessary." Lodge v. Congress Taxi Assn., 340 Mass. 570, 575 (1960).

The evidence showed that "Ryan" lived with A.E. and her mother, watched A.E. when her mother was out, helped A.E. with her toilet training, and moved out after A.E. reported the abuse to her mother. The defendant himself later testified and acknowledged that he lived with A.E. and her mother during the time period of the alleged abuse, babysat A.E. when her mother was not home, participated in A.E.'s toilet training, and moved out of the family's home after A.E.'s mother confronted him with the allegations of abuse. Furthermore, the defendant's description of putting A.E. to bed in her mother's bedroom, where he gave her a pillow and allowed her to watch television, corresponded to A.E.'s account of the circumstances surrounding an instance of abuse. "It is not necessary that any one witness should distinctly swear that the defendant was the man, if the result of all the testimony, on comparison of all its details and particulars, should identify him as the offender." Commonwealth v. Doe, supra at 300, quoting from Commonwealth v. Cavanaugh, 7 Mass. App. Ct. 33, 36 (1979).

Presented with this circumstantial evidence, the jury could draw the inferences necessary to determine the identity of the defendant beyond a reasonable doubt.[4]  Commonwealth v. Tavares, 87 Mass. App. Ct. at 475 (circumstantial evidence sufficed to prove identity).

Exclusion of defendant's profile evidence.  The defendant claims that the judge abused his discretion by excluding from evidence Dr. Fabian Saleh's expert opinion that the defendant did not fit the profile of a pedophile.  The defendant raised his claim of error at a motion in limine hearing and again at trial, preserving the issue for appeal under the prejudicial error standard.  Commonwealth v. Deloney, 59 Mass. App. Ct. 47, 54 (2003).

Prior to trial, Dr. Saleh met with the defendant for six and one-half hours, interviewed him, reviewed his medical records and police reports, and gave him questionnaires designed to test his psychosexual predilections.  After evaluating the defendant, the doctor concluded that he did not fit the profile of a pedophilic sex offender.  Dr. Saleh also reviewed a recording of the Sexual Abuse Intervention Network (SAIN)

---

[4] In light of our determination that evidence independent of the Sexual Abuse Intervention Network forensic interview, which was not included in the appellate record, sufficed to support the verdicts, we need not decide whether the unchallenged introduction of the interview was error, nor whether the defendant's trial counsel was ineffective for his failure to challenge its admission.

forensic interview of A.E. At trial, the doctor testified that the SAIN interview was compromised by suggestive conduct on the part of the interviewer toward A.E.

Following a hearing on motions in limine, the judge ruled that Dr. Saleh's testimony concerning the psychosexual profile of the defendant was inadmissible.[5] Citing Commonwealth v. Day, 409 Mass. 719 (1991), and Commonwealth v. Trowbridge, 36 Mass. App. Ct. 734 (1994), S.C., 419 Mass. 750 (1995), the judge held that "the use of criminal profiles as substantive evidence is inherently prejudicial. It substitutes generality for specificity and preconceptions for evidence."

"The admission of [expert testimony] is largely within the discretion of the trial judge and he will be reversed only where the admission constitutes an abuse of discretion or error of law." Commonwealth v. Caraballo, 81 Mass. App. Ct. 536, 539 (2012), quoting from Commonwealth v. Johnson, 410 Mass. 199, 202 (1991). "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear

---

[5] Despite the judge's decision to preclude the profile testimony, Dr. Saleh testified on cross-examination that "[p]edophilic sex offender doesn't just -- it doesn't happen in one day, it doesn't occur overnight. You have to have behaviors and antecedents suggesting pedophilic interest. There's nothing whatsoever in this case." The judge overruled the Commonwealth's objection to the statement and defense counsel reiterated the doctor's conclusion ("I see no evidence of pedophilia in this man") twice during closing argument. Consequently, the defendant received more than he was entitled to under our law of evidence.

error of judgment in weighing' the factors relevant to the decision, . . . such that the decision falls outside the range of reasonable alternatives."  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Here, the judge exercised sound discretion and based his decision to exclude the criminal profile testimony of Dr. Saleh on a correct interpretation of our law of evidence.  Cf. Commonwealth v. Kulesa, 455 Mass. 447, 455 (2009) (decision based on erroneous interpretation of law was not exercise of discretion).

Although the defendant characterizes the admissibility of the evidence proffered in this case as an issue of first impression in Massachusetts, acknowledged but passed over by the Supreme Judicial Court in Commonwealth v. Trowbridge, 419 Mass. at 756-757, we find that our law of evidence is sufficiently well developed that the trial judge could, and did, draw upon clear authority to determine that profile evidence is inadmissible.  In Commonwealth v. Federico, 425 Mass. 844, 850 (1997), the Supreme Judicial Court provided guidance for the use of expert testimony in the context of sex abuse cases and, in language apposite to this case, the court held that "with respect to the accused, the expert may not provide profiles or testify as to the typical attributes or characteristics of the perpetrators of child abuse."

The prohibition against profile testimony arises from the court's recognition that such evidence is fundamentally irrelevant. "A criminal trial is by its very nature an individualized adjudication of a defendant's guilt or legal innocence. Testimony regarding a criminal profile is nothing more than an expert's opinion as to certain characteristics which are common to some or most of the individuals who commit particular crimes." Commonwealth v. Day, 409 Mass. at 723. "[T]he mere fact that a defendant fits the profile does not tend to prove that [he committed the crime charged]." Commonwealth v. Caraballo, 81 Mass. App. Ct. at 539, quoting from Commonwealth v. Frias, 47 Mass. App. Ct. 293, 296 (1999).[6]

That the evidence in this case was proffered in the form of a "negative" profile -- whereby the defendant sought to demonstrate that he did not fit the profile of a sex abuser -- does not compel a different result. Although the profile was offered to show that the defendant did not fit the type, the

---

[6] Courts in other states have followed similar reasoning in holding profile evidence inadmissible on the ground of irrelevance, as reflected in the cases collected by the Supreme Judicial Court in Commonwealth v. Day, supra (citing "State v. Brown, 370 So. 2d 547, 554 [La. 1979] [drug courier profile 'does not tend to prove that this defendant is guilty of the offense charged, nor does it explain any relevant fact with regard to guilt or innocence']; Duley v. State, 56 Md. App. 275, 281 [1983] [child battering profile 'totally irrelevant because it does not tend to prove that (the defendant) committed the acts of abuse attributed to him']; State v. Maule, 35 Wash. App. 287, 293 [1983] ['"relevancy of (such) evidence is not discernible']).

effect is ultimately identical.  Implicit in the defendant's assertion that he does not match a criminal profile is the assumption that such a profile would be probative if introduced to prove that someone who matched the profile would be more likely to have committed the crimes.  Our cases instruct otherwise.  See Commonwealth v. Day, supra (evidence concerning a "child battering profile" does not meet relevancy test); Commonwealth v. Poitras, 55 Mass. App. Ct. 691, 694 (2002) ("admission of [profile] testimony . . . has been condemned by the appellate courts of this Commonwealth as error, especially where the particular characteristics the expert testified to could be taken by the jury to identify the defendant as fitting the profile and therefore more likely than not to have committed the crime"); Commonwealth v. Deloney, 59 Mass. App. Ct. at 57 ("It is a fundamental principle of our system of criminal justice that we do not convict people of crimes on the basis of statistics or models"); Commonwealth v. Caraballo, supra (criminal profile evidence "does not tend to prove that [the defendant committed the crime charged]"); Commonwealth v. Aspen, 85 Mass. App. Ct. 278, 285 (2014) (appellate counsel ineffective for failing to raise erroneous admission of profile testimony).

The defendant likens the criminal profile testimony to character evidence, and argues that, as with a reputation for good character, the proffered profile evidence should be

permitted to establish a pertinent character trait:  that the defendant is not a pedophile, and that he therefore is less likely to have sexually abused A.E.  According to time-honored practice, a defendant is entitled to introduce evidence of his own good character to establish that he is not the type of person to commit the charged offense.  The rule rests on the premise that "[a] man of good character is unlikely to be guilty of a crime involving moral turpitude."  Commonwealth v. Nagle, 157 Mass. 554, 554 (1893).  See generally Mass. G. Evid. § 404(a) note (2016).  In urging the court to adopt his analogy, the defendant elides an essential distinction between permissible character evidence and impermissible profile evidence.  "Character is a generalized description of one's disposition, or of one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness."  Commonwealth v. Bonds, 445 Mass. 821, 829 (2006), quoting from Figueiredo v. Hamill, 385 Mass. 1003, 1004 (1982).  By contrast, criminal profile evidence is a composite of "certain characteristics which are common to some or most of the individuals who commit particular crimes."  Commonwealth v. Caraballo, supra, quoting from Commonwealth v. Frias, 47 Mass. App. Ct. at 296.  In other words, character evidence pertains to traits that are personal to the defendant; profile evidence consists of characteristics exhibited by other people who have

been convicted of a similar crime. In an individualized adjudication, evidence of characteristics common to others is not probative of the defendant's guilt or innocence.

Similar to his argument concerning character evidence, the defendant contends that the proffered criminal profile evidence is analogous to the psychiatric evidence that is routinely admitted in other proceedings, and should likewise be deemed admissible here. We find that the procedural contexts to which the defendant refers are distinguishable from the present case.

Psychiatric evidence adduced to assess whether a defendant is competent to stand trial or is criminally responsible for an alleged crime serves distinct functions. "An examination to determine competency has a 'limited, neutral purpose.' . . . [It] does not bear on the defendant's guilt, but on his or her current ability to understand the proceedings and participate in the defense." Vuthy Seng v. Commonwealth, 445 Mass. 536, 545 (2005). A defendant seeking to assert lack of criminal responsibility may offer "a psychiatric inquiry into the existence or nonexistence of a mental disease or a defect, which may preclude a defendant from being criminally responsible for his actions. The primary diagnostic source in such a situation often is that which the examiner may glean from the nature and content of the defendant's statements." Blaisdell v. Commonwealth, 372 Mass. 753, 759-760 (1977). See G. L. c. 123,

§ 15(a).  The results of these psychiatric examinations address only the defendant's own mental condition, which profile evidence is useless in assessing.

Psychiatric profile evidence is admissible in the context of sexual dangerousness hearings, sex offender registration hearings, and involuntary commitment hearings, as a means of predicting a defendant's conduct.  "[W]hether a person suffers from a mental abnormality or personality defect, as well as the predictive behavioral question of the likelihood that a person suffering from such a condition will commit a sexual offense, are matters beyond the range of ordinary experience and require expert testimony" (emphasis supplied).  Commonwealth v. Boyer, 61 Mass. App. Ct. 582, 587-588 (2004) (sexual dangerousness hearing), quoting from Commonwealth v. Bruno, 432 Mass. 489, 511 (2000).  The determination whether a defendant poses a substantial risk of physical harm to other persons is implicitly a statement of probability.  Commonwealth v. Nassar, 380 Mass. 908, 916 (1980) (involuntary commitment hearing).  "Factors relevant to the risk of reoffense shall include, but not be limited to . . . (f) whether psychological or psychiatric profiles indicate a risk of recidivism."  G. L. c. 6, § 178K(1), as appearing in St. 1999, c. 74, § 2 (sex offender registry board guidelines).  Employed for the purpose of prognostication, a psychiatric profile may aid in assessing the likelihood that a

person will someday pose a danger to himself or to others.  As we stated supra, however, a profile cannot be used to prove that a defendant performed or did not perform some alleged wrong in the past.

Even if we were to deem the criminal profile evidence relevant, the defendant has not met the foundational requirements necessary for a determination that the expert opinion is scientifically valid.[7]  See Commonwealth v. Barbosa, 457 Mass. 773, 783 (2010) (setting forth foundational requirements for expert testimony).  As we noted in Commonwealth v. Trowbridge, 36 Mass. App. Ct. at 741 (reversed on other grounds), numerous authorities preclude such expert testimony because the theory underlying the opinion has not been shown to be reliable.  Commonwealth v. Lanigan, 419 Mass. 15, 25-26 (1994).  "There is no psychological test that validly detects persons who have or will sexually abuse children. . . .  Thus, it is appropriate to conclude that there is no profile of a 'typical' child molester."  Myers on Evidence of Interpersonal Violence § 6.28, at 587 (5th ed. 2011), and cases cited.  There was neither error of law nor abuse of discretion in the judge's

_____

[7] Because the judge determined that criminal profile evidence was categorically inadmissible, no Daubert hearing was held to assess the reliability of the theory underlying the proffered expert testimony.  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-595 (1993).

decision to exclude expert testimony that the defendant did not match the profile of a pedophile.

Admission of pornographic titles and Internet search terms. The defendant next argues that the judge abused his discretion by allowing the Commonwealth to introduce testimony regarding the titles of pornographic files and the words used in Internet searches found on a laptop computer used by the defendant. The defendant contends that the admission of an excessive amount of inflammatory evidence was error because any relevance it may have had was outweighed by its undue prejudice. Because the defendant did not object to the challenged testimony at trial, we review to determine whether any error created a substantial risk of a miscarriage of justice. Commonwealth v. Halsey, 41 Mass. App. Ct. 200, 203 (1996).

A laptop computer, owned by A.E.'s mother, was stationed in the family's living room where the defendant regularly used it. The defendant was proficient in computer operations, and helped A.E.'s mother, who described herself as "[c]omputer illiterate," to upload photographs onto the device. The defendant also installed a computer cleaning and optimization program, CCleaner, which, according to his testimony, he used to wipe the hard drive at the end of each session.

The defendant and A.E.'s mother both testified that the defendant watched pornography on the computer often. On two

occasions, A.E.'s mother viewed pornography with the defendant; however, she never accessed pornography herself and expressed discomfort with the defendant's pornography viewing habit. On May 6, 2012, suspicious that the defendant had been watching pornography on the computer while she and A.E. were asleep upstairs, A.E.'s mother confronted the defendant, who admitted that he had been viewing pornography. On May 8, 2012, the defendant activated the CCleaner program at 1:00 P.M., and then again at 5:00 P.M., deleting more than 2,000 files from the computer.

After A.E. reported that the defendant had sexually abused her and had exposed her to pornography, her mother voluntarily handed over the computer to a police detective, who delivered it for examination to the digital forensic laboratory (laboratory) at the Office of the Attorney General. At trial, David Papargiris, a digital forensic specialist and former director of the laboratory, testified that he had conducted a forensic examination of the computer and had recovered approximately 1,400 image files and nineteen video files that he characterized as pornographic in nature.[8] The jury heard that some of those

---

[8] Referring to examples drawn from a report entered in evidence, Papargiris testified that he found files titled: "Step-dad fucks stepdaughter part 1," "Step-dad fucks stepdaughter part 2," "Russian anorexic teen girl fucked by father-in-law," "Father fucks tiny teen stepdaughter," "Little cutie Kasey gets her first anal," "Father fucks tiny

video files depicted adults engaging in anal sex or contained references to anal sex in their titles.  In addition, Papargiris testified that he had identified the specific Internet search terms:  "Tiny daughter anal," and "Tiny daughter and mindless behavior."  According to Papargiris, whoever performed the Internet searches had affirmatively typed in those terms.

"All evidence, including that of a violent or sexual nature, must meet the threshold test of relevancy." Commonwealth v. Carey, 463 Mass. 378, 387 (2012).  To be relevant, evidence "must have a 'rational tendency to prove an issue in the case,'" or "render[] the desired inference more probable than it would have been without it."  Commonwealth v. Petrillo, 50 Mass. App. Ct. 104, 107-108 (2000), quoting from Commonwealth v. Fayerweather, 406 Mass. 78, 83 (1989).

The search terms entered into the computer and the names of the files that had been selected for viewing were clearly relevant and probative to establish the defendant's interest in

stepdaughter," "Stepfather fucks his young blonde teen," "Min dad fucked young teen daughter on table," "Father and daughter taboo sex," "Daughter Ashlyn . . . Rae seduces mature mom and old daddy into family taboo sex," "Hot tiny Spanish spinner babe Lily gets an anal creampie," "German amateur Nikita total anal," "Innocent teen girl takes a huge dick up her tiny asshole," "Brunette teens get an anal pounding for the first time," "A cute girl gets anal fucked for the first time," "First anal for Anime girl," "Young girl blonde first anal," "Tiny daughter anal," "Skinny young teen does anal," and "Hot young emo teen gets ass stretched her first anal fuck."

committing the crimes charged.[9]  See Commonwealth v. Wallace, 70
Mass. App. Ct. 757, 764 (2007) ("Evidence of a defendant's
predisposition to commit the crime charged has long been held to
be relevant").  Contrast Commonwealth v. Christie, 89 Mass. App.
Ct. 665, 671-673 (2016) (evidence that defendant, an adult male
homosexual, had interest in viewing depictions of adult males
engaged in generic acts of same-sex intercourse, standing alone,
irrelevant to whether defendant has interest in sexual conduct
with underage boys).  To counter the defense theory that someone
other than the defendant had sexually abused A.E., the
Commonwealth properly adduced evidence demonstrating his
interest in sex between a stepfather and his stepdaughter,
thereby tending to prove that the defendant, who could be seen
as A.E.'s stepfather, was the perpetrator of the alleged abuse.
The evidence also served to corroborate A.E.'s testimony.  Many
of the titles of the pornographic files and the description of
the video content evince a connection to A.E.'s allegations of
anal intercourse, and the title, "Min dad fucked young teen
daughter on table," explicitly parallels A.E.'s account of the
defendant "massaging" her "bum" while she lay on a living room
table.  Furthermore, with regard to the charge of disseminating
pornography to a minor, the challenged evidence substantiated

---

[9] This is so even if the material did not actually depict
children.

A.E.'s account of watching a video recording of a man "massaging" a woman with his penis.

"Nonetheless, to be admissible, the probative value of the evidence must not be substantially outweighed by its prejudicial effect." Commonwealth v. Bell, 473 Mass. 131, 144 (2015). See Mass. G. Evid § 403 (2016). The defendant argues on appeal that the probative value of the pornographic titles and Internet searches was outweighed by the risk of undue prejudice and, specifically, he contends that the evidence was excessive in quantity and inflammatory in nature. Although the twenty titles selected by the Commonwealth from the inventory of pornographic computer files arguably amounted to a substantial quantity of highly charged evidence, in the circumstances of this case, the admission did not constitute an abuse of discretion giving rise to a substantial risk of miscarriage of justice.

The very quantity of files in the computer inventory had evidentiary value, because it manifested the defendant's sustained and purposeful interest in the themes of sex, and particularly anal sex, with young girls, and sex between stepfathers and stepdaughters, and contradicted the defense theory that the defendant had no pedophilic interest. See Commonwealth v. Carey, 463 Mass. at 392 n.18 (quantity of potentially inflammatory evidence demonstrated depth of defendant's interest in, and inquiry into, asphyxiation). The

substantial quantity of pornography in the inventory also made it more probable that the files were amassed by someone with continuous access to the computer, as opposed to one of the occasional visitors to the home, as the defendant proposed. Furthermore, the inflammatory potential of the pornographic material was diminished by the fact that only an inventory of the titles, and not the images, was submitted to the jury. Contrast Commonwealth v. Petrillo, 50 Mass. App. Ct. at 106-110 (harmless error to show sixteen minutes of hard-core pornographic videotape to jury); Commonwealth v. Juandoo, 64 Mass. App. Ct. 56, 61 (2005) (reversible error to admit "a substantial quantity of pornography," including pornographic videotapes, seventy-seven pornographic images, and three pornographic magazines, all of which were provided to jury during deliberations).

The judge had no duty sua sponte to conduct an analysis to determine whether the risk of inflaming the jury outweighed the probative value of the evidence, nor to issue a limiting instruction. Thus, where admission of the evidence did not "fall[] outside the range of reasonable alternatives," there was no abuse of discretion. L.L. v. Commonwealth, 470 Mass. at 185 n.27. Moreover, were we to discern error in the quantity of references to pornographic titles not specifically pertinent to the crimes alleged, where the defense raised no objection to the

testimony, we discern no risk of a miscarriage of justice.  See Commonwealth v. Halsey, 41 Mass. App. Ct. at 204 (cumulative evidence presented "little risk of a miscarriage of justice").

Judgments affirmed.