NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

22-P-162                                      Appeals Court

COMMONWEALTH  vs.  DOMINIQUE M. OLIVER.

No. 22-P-162.

Middlesex.     January 5, 2023. - May 15, 2023.

Present:  Ditkoff, Singh, & Grant, JJ.

Uttering Forged Instrument. Negotiable Instruments, Forgery.
    Forgery. Evidence, Intent. Intent. Practice, Criminal,
    Required finding.

Complaint received and sworn to in the Malden Division of the District Court Department on March 6, 2019.

The case was tried before William G. Farrell, J.

Joshua M. Daniels for the defendant.
Lindsay Russell, Assistant District Attorney, for the Commonwealth.

DITKOFF, J.  The defendant, Dominique M. Oliver, appeals

from a conviction, after a District Court jury trial, of

uttering a false check, in violation of G. L. c. 267, § 5.[1]  We

_____

[1] The jury acquitted the defendant of larceny by check, G. L. c. 266, § 37, a crime that requires proof that the defendant knew there were insufficient funds to pay the check.

conclude that the jury reasonably found that the defendant knew that the check she cashed was forged, based on evidence that it was apparent that the signature on the forged check did not match the name of the purported maker, combined with the defendant's use of the drawee bank to obtain a large amount of cash.  Further concluding that the trial judge properly used the model jury instructions, we affirm.

1.  Background.  a.  The Commonwealth's case.  At 12:45 P.M. on January 19, 2019, the defendant entered the Malden branch of the Salem Five Cents Savings Bank (Salem Five Bank).  She approached the counter and presented a check for $3,600 to the teller.  The check was a Salem Five Bank check made out to the defendant on the joint account of Dr. Thomas Mahoney and his wife, Eileen Mahoney, a retired nurse.  The check purported to be signed by Eileen.[2]  Unlike the signatures on many checks, this signature was clear and legible, with each letter easily

---

See Commonwealth v. Littles, 477 Mass. 382, 384-385 (2017).  The record does not reflect why the Commonwealth proceeded on this plainly inapplicable charge instead of seeking a complaint for larceny under G. L. c. 266, § 30 (1).  This is an example of a failure to consider whether the complaint as sought by the police officer properly reflects the crimes supported by the facts alleged, a review that ought to be undertaken by a prosecutor at arraignment.

[2] Because the Mahoneys "share a last name, we refer to them by their first names."  Commonwealth v. Sanders, 101 Mass. App. Ct. 503, 504 n.3 (2022).

discernable.[3]  Eileen's name, however, was misspelled; the spelling did not match her printed name on the check.

The defendant endorsed the check with her signature.  She presented her genuine Massachusetts driver's license to the teller and "successfully withdr[ew]" the funds.  A Salem Five Bank complaint manager testified that the process for cashing a check involved obtaining identification for the person cashing the check and checking to see whether the "customer is on the OFAC list."[4]  As described by the bank manager, the process for cashing a check did not include an evaluation of the signature on the check.

This check was numbered 9824; the other checks drawn on the Mahoneys' account from that time period all were numbered between 1551 and 1786.  With the sole exception of an electronic mortgage payment, no other check from this time period exceeded $800.

---

[3] Interestingly, Eileen's signatures on her legitimate checks were also clear and legible, though of course properly spelled and completely unlike the signature on the check presented by the defendant.  Eileen credited this to her use of the Palmer method of penmanship, which, as Eileen testified, "[t]hey don't teach . . . anymore."  See State v. Gomes, 690 A.2d 310, 320 n.3 (R.I. 1997).

[4] This refers to the United States Treasury Department's Office of Foreign Assets Control's "Specially Designated Nationals & Blocked Persons List," Cortez v. Trans Union, LLC, 617 F.3d 688, 696 (3d Cir. 2010).

As it happened, the Mahoneys' Social Security and annuity payments had been electronically deposited on January 16, so there were adequate funds to cover the withdrawal. Over the course of the next week, the account was depleted through legitimate transactions. Perhaps because the Mahoneys had been customers for over forty years, the bank kindly honored the checks that drew on insufficient funds and notified Eileen by e-mail that her account had been depleted.

Eileen went to the bank, where an employee showed her the $3,600 check. The employee also showed her a photograph of the defendant's cashing the check. Eileen reported the check forged (signing the report with her neat and legible signature) and notified the police. At trial, Eileen testified that she did not sign the $3,600 check and did not know any person by the defendant's name.

The defendant elicited from Eileen that, at some point in 2019, the daughter of a visiting aide from the Veterans Administration stole a check from her and "was enhancing the check." There was no evidence when this occurred in relation to January 19, 2019.[5]

---

[5] The defendant later testified that she did not know anyone by the name of this daughter.

b.  The defendant's case.  The defendant testified and admitted to cashing the check.  She stated that she had received the check from Yolanda Morris as payment for four to five months of caring for Morris's wheelchair-bound son, who was the victim of a shooting.  She testified that she did not notice that the check was not drawn from Morris's account.  She stated that she "did not observe the check prior to cashing it" because "it was COVID"[6] and she "was excited."

2.  Sufficiency of the evidence.  a.  Standard of review. "When reviewing the denial of a motion for a required finding of not guilty, 'we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Commonwealth v. Quinones, 95 Mass. App. Ct. 156, 162 (2019), quoting Commonwealth v. Faherty, 93 Mass. App. Ct. 129, 133 (2018). "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'"  Commonwealth v. Lagotic, 102 Mass. App. Ct. 405, 407 (2023), quoting Commonwealth v. Ross, 92 Mass. App. Ct. 377, 378 (2017).  "Because the defendant moved for a required finding

_____

[6] Obviously, January 2019 was well before the COVID-19 pandemic began, even in China.  See Desrosiers v. Governor, 486 Mass. 369, 370 (2020), cert. denied, 142 S. Ct. 83 (2021).

of not guilty at the close of the Commonwealth's case, we review the sufficiency of only the evidence presented at the time the Commonwealth rested after its case-in-chief." Commonwealth v. Carrillo, 483 Mass. 269, 271-272 (2019).[7]

b. Uttering. "In order to support a conviction of uttering, the Commonwealth must show that the defendant '(1) offer[ed] as genuine; (2) an instrument; (3) known to be forged; (4) with the intent to defraud.'" Commonwealth v. Bonilla, 89 Mass. App. Ct. 263, 265 (2016), quoting Commonwealth v. O'Connell, 438 Mass. 658, 664 n.9 (2003). Accord Commonwealth v. Stirlacci, 483 Mass. 775, 789 (2020). There is no challenge to the sufficiency of the evidence on the first two elements. Rather, the defendant challenges the sufficiency of the Commonwealth's evidence that the defendant knew the check was forged, an argument that goes to the third and fourth elements.[8]

---

[7] Ordinarily, we would also "consider the state of the evidence at the close of all the evidence, to determine whether the Commonwealth's position as to proof deteriorated after it closed its case." Ross, 92 Mass. App. Ct. at 379, quoting Commonwealth v. O'Laughlin, 446 Mass. 188, 198 (2006). Here, the defendant properly makes no claim that the evidence deteriorated during the defense case, as the jury were entitled to disbelieve the defendant's testimony. See Ross, supra at 381.

[8] Although a defendant could intend to defraud without knowing that the check was forged, see, e.g., Bonilla, 89 Mass. App. Ct. at 264-265, here the Commonwealth's proof of intent to

"Knowledge is a question of fact, and proof is frequently made by inference from the facts and circumstances developed at trial." Commonwealth v. Tavares, 87 Mass. App. Ct. 471, 475 (2015). In the context of knowledge of forgery (as in all contexts), "[c]ircumstantial evidence is competent to establish guilt beyond a reasonable doubt." Commonwealth v. Murphy, 70 Mass. App. Ct. 774, 777 (2007), quoting Commonwealth v. Merola, 405 Mass. 529, 533 (1989).

We do not write on a blank slate. In Commonwealth v. Scordino, 102 Mass. App. Ct.    ,    (2023), we concluded that "evidence that a defendant in an otherwise unremarkable bank transaction who cashed a check from a person who did not know the defendant and did not owe the defendant money, alone" is not "sufficient to support a finding beyond a reasonable doubt that the defendant knew the instrument was forged and acted with an intent to defraud."

Here, the Commonwealth presented more than the mere fact of the defendant's cashing a check purportedly made by a person who did not know the defendant and did not owe her money. First, and most important, the evidence of forgery was apparent from the face of the check. Eileen Mahoney's name is misspelled in

---

defraud depended on its proving that the defendant knew the check was forged. See O'Connell, 438 Mass. at 664.

the signature line, and the misspelling is obvious because the name is spelled differently than in the printed name on the check. As mentioned, this is not a case where the misspelling is debatable because the signature is sloppy or otherwise unreadable. Here, the signature is neat and precise, and every letter can be read with ease. Because the forgery was patent on the face of the check that the defendant presented, the jury could reasonably infer that she knew of the forgery. See Tavares, 87 Mass. App. Ct. at 475 (sufficient evidence where counterfeit bills "were patently fake in appearance"). Accord State v. Gantt, 504 S.W.2d 295, 298, 300 (Mo. Ct. App. 1973) (sufficient evidence where, inter alia, purported maker's first name was misspelled); Mooney v. State, 888 S.W.2d 182, 184 (Tex. Ct. App. 1994) (sufficient evidence where "alteration was apparent"); State v. Kilhstrom, 988 P.2d 949, 953 (Utah App. 1999) (sufficient evidence would exist where "the signature does not match the name printed on the check").

To be sure, it is possible that a person could fail to notice that the signature on a check did not match the name on the check, even where the signature is as clear and legible as in this case. Indeed, the defendant could argue (even without testimony from the defendant, as here) the improbable proposition that the defendant cashed the check without ever looking at it. The jury, however, were not required to draw

either of those inferences. Rather, "the inferences a jury may draw need only be reasonable and possible and need not be necessary or inescapable." Commonwealth v. Kapaia, 490 Mass. 787, 791 (2022), quoting Commonwealth v. West, 487 Mass. 794, 800 (2021). Among those reasonable inferences is that a person looks at a check before cashing it, especially where, as here, the check was for a large amount.

Second, the evidence at trial was that a check could be deposited into a bank account by a mobile deposit or at an automated teller machine, but that receiving cash for it required going to the bank in person and presenting identification. The defendant went to the bank that the check was drawn on, presented a driver's license, and "successfully withdr[ew]" $3,600 from the account. Unlike in Scordino, 102 Mass. App. Ct. at    , where the defendant went to her own bank and cashed a much smaller check, here the jury could reasonably infer that the defendant's use of the drawee bank to secure immediate possession of a large amount of cash supported the inference that she knew that the check was forged. See State v. Torres, 111 Conn. App. 575, 583-584 (2008) (circumstances of withdrawal of cash created inference of knowledge that check was forged); Huntley v. State, 4 S.W.3d 813, 815 (Tex. Ct. App. 1999) (en banc) (amount of check contributed to sufficiency as it is "unlikely that appellant would have been given such a

large check by a stranger").  The evidence here was more than an "unremarkable bank transaction [by a defendant] who cashed a check from a person who did not know the defendant and did not owe the defendant money," Scordino, supra at    , and was sufficient to allow a reasonable jury to conclude that the defendant knew that the check she cashed was forged.

3.  Jury instructions.  "Judges have broad discretion in framing jury instructions, including determining the appropriate degree of elaboration."  Commonwealth v. Toolan, 490 Mass. 698, 708 (2022).  "When reviewing jury instructions, we 'evaluate the instruction as a whole, looking for the interpretation a reasonable juror would place on the judge's words.'"  Commonwealth v. Fan, 490 Mass. 433, 453 (2022), quoting Commonwealth v. Odgren, 483 Mass. 41, 46 (2019).  "Due to the defendant's failure to object to the jury instructions given at trial, our review is limited to determining whether any error in the instructions gave rise to a substantial risk of a miscarriage of justice."  Commonwealth v. Taranovsky, 93 Mass. App. Ct. 399, 405 (2018).[9]

---

[9] Unlike with the sufficiency of the evidence, in determining whether a substantial risk of a miscarriage of justice exists, "[w]e review all of the evidence and the case as a whole," not just the Commonwealth's case.  Commonwealth v. Lapointe, 55 Mass. App. Ct. 799, 807-808 (2002), quoting Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005).

Here, following Instruction 8.240 of the Criminal Model Jury Instructions for Use in the District Court (2009), the trial judge instructed the jury that, to prove the third element of uttering, the Commonwealth had to prove beyond a reasonable doubt "that the Defendant knew [the check] was falsely made, forged or altered."  This instruction adequately conveyed the requirement that the Commonwealth prove that the defendant knew that the check was forged.  See Commonwealth v. Reddy, 85 Mass. App. Ct. 104, 112-113 (2014), quoting Commonwealth v. Walker, 421 Mass. 90, 100 (1995) ("The trial judge did not give the general knowledge instruction in the model jury instructions. . . .  [T]he 'charge, as a whole, adequately covered the issue'").  There was no error.

                                        Judgment affirmed.

SINGH, J., (concurring).  I agree that the defendant's conviction for uttering should be affirmed.

In my view, evidence that the victim did not know the defendant and had no reason to be paying her money is sufficient to create a reasonable inference that the defendant knew the check was a forgery.  That view, however, is foreclosed by this court's holding in Commonwealth v. Scordino, 102 Mass. App. Ct.    ,    (2023).  There, the court relied on a handful of cases that recite that guilty knowledge cannot be inferred from the mere passing of a forged instrument.[1]  However, evidence that the victim has no relationship to the defendant is more evidence than the mere passing of a forged instrument.  Where the account

---

[1] None of those cases involved the issue presented in Scordino.  In both Parks v. State, 746 S.W.2d 738, 741 (Tex. Crim. App. 1987), as well as in the case it relies on, Albrecht v. State, 486 S.W.2d 97, 102-103 (Tex. Crim. App. 1972), the court held that evidence that the defendant committed other offenses was relevant and admissible to prove guilty knowledge in the trial of a forgery offense.  In United States v. Barnes, 579 F.2d 46, 47-48 (7th Cir. 1978), the court held that evidence that the defendant admitted to having filled out money orders in the name of a fictitious payee was sufficient to establish his guilty knowledge.  In Commonwealth v. Horton, 465 Pa. 213, 218 (1975), the court held that evidence that the defendant passed a check from a defunct corporation was insufficient to establish that she knew the check was worthless where she was merely the payee and not the account holder.  Each case cited the uncontroversial proposition that guilty knowledge cannot be inferred from the mere passing of a forged or worthless instrument.  Yet none of them supports the proposition that evidence that the account holder has no relationship to the defendant is insufficient to create a reasonable inference of guilty knowledge.

holder testifies that she has no relationship with the defendant, it is a reasonable inference that the defendant knows that the account holder has no reason to be paying the defendant and so must know that the check is not genuine.  This is the prevailing view in jurisdictions that have considered the precise issue.[2]

But for this court's decision in Scordino, I would affirm based on the reasonable inference to be drawn between the lack of any relationship between the account holder and the defendant, without the need for any additional justification.

---

[2] See, e.g., Commonwealth v. Green, 203 A.3d 250, 255 (Pa. Super. Ct. 2019) (en banc) (fact that defendant never worked for company and had no reason to receive check from it was circumstantial evidence that defendant "knew [company] would not have his name and address for payroll or other payment purposes, and knew that he would not be a payee on a genuine [company] check for nearly $500.00"); Johnson v. State, 425 S.W.3d 516, 521-522 (Tex. Ct. App. 2012) (discussing line of cases finding that evidence of no relationship between defendant and account holder creates inference that defendant knows he has no reason to be paid by account holder and so must know check is forgery); State v. Williams, 712 P.2d 220, 223 (Utah 1985) (where victim testified that he did not know defendant or have any reason to pay him any money, reasonable inference was that defendant knew check was forged).