NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1134

COMMONWEALTH

vs.

VICTOR M. VASQUEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A District Court jury convicted the defendant of possession of child pornography in violation of G. L. c. 272, § 29C. The images at issue were discovered on the defendant's computer pursuant to the execution of a search warrant. On appeal, the defendant argues that the affidavit submitted in support of the search warrant failed to establish probable cause to believe that child pornography would be found on a computer in his home. In addition, he claims error in the admission at trial of certain evidence regarding his Web browser and search histories. We affirm.

1. Search warrant. The search warrant was issued based on a detailed affidavit that explained how the police came to believe that child pornography likely could be found on a computer at the defendant's home. In February of 2019, the

search engine known as Microsoft Bing sent a report, known as a CyberTipline report, to the National Center for Missing and Exploited Children (NCMEC) about a suspected incident of child pornography involving a particular Internet Protocol (IP) address.  NCMEC in turn forwarded the CyberTipline report to the State police.

According to the CyberTipline report, someone at the referenced IP address had uploaded an image of a naked child while using a feature of Bing known as BingImage Visual Search (BingImage).  BingImage is designed to allow users to search for images that are similar to ones uploaded by the user and therefore already in the user's possession.  Based on the description of the image, there is little question that the affidavit established that possession of it was unlawful.[1] Further police investigation, which included an administrative warrant served on the relevant Internet service provider, uncovered that the IP address referenced in the CyberTipline report belonged to the defendant.  On October 21, 2019, the

---

[1] The affidavit states that the image "depicts a nude . . . prepubescent female positioned on her hands and knees, on the floor.  The child's legs are spread apart exposing her vagina and anus."  Based on that description, the image appears to qualify as child pornography, which includes any images "involving a lewd exhibition of the unclothed genitals" of a child.  G. L. c. 272, § 29C.

State police applied for a search warrant of the home at which the defendant lived, and they executed the warrant that day.

The defendant's challenge to the search warrant is limited: he argues only that the information on which the warrant relied was stale. In other words, the defendant claims that even if the police had probable cause to believe that child pornography had been on his computer in February of 2019 when the CyberTipline report was generated, they did not have probable cause to believe it would still be there some eight months later when they applied for the search warrant. For the reasons that follow, we disagree.

As the defendant acknowledges in his brief, where the Commonwealth can demonstrate that someone is "interested in" child pornography, then information that that person is in possession of child pornography does not become stale even with the passage of several months. See Commonwealth v. Guastucci, 486 Mass. 22, 29-30 (2020) (information that defendant uploaded child pornography to Skype not stale even with passage of seven months). That the information is not stale is based on "the belief that individuals who are interested in child pornography are likely to collect and retain such images in the privacy of their own homes." Id. at 29, citing United States v. Irving, 452 F.3d 110, 125 (2d Cir. 2006), S.C., 554 F.3d 64 (2d Cir. 2009). The question then, as it was in Guastucci, is whether

3

the search warrant affidavit sufficiently established that the defendant was a collector of child pornography and did not obtain the image by accident.

Guastucci, 486 Mass. at 30-31, provides numerous nonexclusive examples of how the Commonwealth can demonstrate that someone is "interested in" child pornography. The defendant highlights the absence of evidence here regarding the enumerated examples. For instance, he emphasizes that there was no evidence that the defendant previously had been identified as a pedophile. As the Supreme Judicial Court has recognized, however, "in some circumstances, a reasonable inference that a suspect is 'interested in' child pornography might be drawn based on a single incident of possession or receipt of child pornography where, for example, the images were obtained through 'a series of sufficiently complicated steps' suggesting a 'willful intention to view the files,' or where the suspect redistributed the file to others." Id. at 31, quoting United States v. Raymonda, 780 F.3d 105, 115 (2d Cir.), cert. denied, 577 U.S. 968 (2015). "Thus, an inference that an individual is a collector of child pornography 'proceed[s] from circumstances suggesting that [the suspect] accessed those images willfully and deliberately, actively seeking them out to satisfy a preexisting predilection.'" Guastucci, supra, quoting Raymonda, supra.

To assess whether the showing here was sufficient to meet that standard, we turn to the particular details regarding how the CyberTipline report was generated. According to the affidavit, there are three different ways in which an action taken by a BingImage user could generate a CyberTipline report:

> "First, the user did a reverse image search by uploading the image to Bing. Second, the user input a URL [Uniform Resource Locator, that is, a Web address,] into the BingImage search that specifically links to a contraband image or video. Or third, the user clicked on the share button on an illegal image they found using BingImage."

As we read the affidavit, it is not clear which of these three potential actions the person using the IP address took with respect to the illegal image. We address each in turn.

Based on what the image that triggered the CyberTipline report depicted, see note 1, supra, the nature of it as child pornography would have been apparent to anyone who possessed it. See Commonwealth v. Sullivan, 82 Mass. App. Ct. 293, 302-307 (2012) (describing what constitutes "lewd" image of naked child). Although the search warrant affidavit does not reveal how the person using BingImage originally came into possession of the image, if that user had uploaded the image into a search engine designed to provide users with similar images, that would be enough to show the user's "willful intention" to possess such images. The same is true if -- instead of uploading the offending image itself -- the person had entered an image-

5

specific URL assigned to it.  Finally, if someone in possession of such an image had taken steps to share the image with others, that itself indicates an interest in child pornography. Accordingly, even though we do not know what specific action the user here took that triggered the report, any of the three possibilities was sufficient to demonstrate the user's interest in child pornography.

Of course, even where an interest in child pornography has been demonstrated, the Commonwealth cannot delay a search forever.  As the Supreme Judicial Court has put it, "Every investigation, including the possession and distribution of child pornography, has a shelf life."  Guastucci, 486 Mass. at 30.  However, the delay here was less than eight months, which was only slightly longer than the seven-month delay in Guastucci, supra at 23.  Although we acknowledge that the Guastucci court warned that a "delay of seven months may be at the outer limit in these circumstances," id. at 27, we do not find the slightly longer period here dictates a different result.  Accordingly, we conclude that the motion judge did not err in rejecting the defendant's argument that the information provided in the report to NCMEC was stale.

2.  Search and website browsing histories.  At trial, the Commonwealth offered evidence that the defendant had an extensive history of searching for child pornography on his

computer and of visiting websites that -- based on their names -- likely contained it. For example, there was evidence that around 2:30 A.M. on November 29, 2018, the defendant used Bing to search for "Ls Nude RU Girls Budding."[2]  On appeal, the defendant argues that such evidence amounted to improper propensity evidence and that, in any event, its potential for undue prejudice outweighed any probative value.  Because the defendant did not object to such evidence at trial, our review is limited to whether any error in the admission of such evidence caused a substantial risk of a miscarriage of justice. Commonwealth v. McCoy, 456 Mass. 838, 845-846 (2010).

Although evidence of prior bad acts may not be admitted "for the purpose of showing [a defendant's] bad character or propensity to commit the crime charged, . . . [s]uch conduct . . . may be admissible for other purposes" such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of knowledge. Commonwealth v. Vera, 88 Mass. App. Ct. 313, 319 (2015), quoting Commonwealth v. Copney, 468 Mass. 405, 412 (2014).  We agree with the Commonwealth that evidence of the defendant's search and Web browser histories had significant probative value.  For

_____

[2] There was testimony that "Ls" typically stands for "Lolita series," and that "RU" stands for "Russian," where there is a developed market for child pornography.

7

one thing, such evidence made it more likely that it was the defendant and not another who downloaded the child pornography found on his computer.  Id. at 322.  For another, it made it more likely that the downloading of the images was intentional, not accidental.  See Commonwealth v. Coates, 89 Mass. App. Ct. 728, 738-739 (2016).  Had the defendant objected to such evidence, the judge would not have abused his discretion by admitting it.  It may be, as the defendant suggests, that faced with such an objection, the judge might have placed some quantitative limits on such evidence, but even if we were to assume that the judge should have done so sua sponte, we would not find that such error created a substantial risk of a miscarriage of justice.  The evidence of the defendant's guilt was overwhelming.  Not only was child pornography found on his personal computer to which no one else had access,[3] but the defendant admitted to the police that he regularly downloaded such images there.  We are confident that the jury's verdict

---

[3] The defendant lived alone with his mother who testified that she never used his computer.  During his interview with the police, which was admitted in evidence and played for the jury, the defendant stated that he never left the house and that only he knew the password to his wireless network.

would have been the same even if the defendant's search and Web browser histories had been limited, or even excluded altogether.[4]

Judgment affirmed.

By the Court (Vuono, Milkey & Hand, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered:  November 30, 2023.

---

[4] We recognize that had he requested it, the defendant would have been entitled to an instruction that his search and browser history evidence could not be used as propensity evidence. However, the judge had no duty to provide such a limiting instruction sua sponte.  See Commonwealth v. Sullivan, 436 Mass. 799, 809 (2002).  In any event, the absence of such an instruction did not create a substantial risk of a miscarriage of justice.

[5] The panelists are listed in order of seniority.